## The People of the State of Illinois, Defendant in Error, v. Joseph Clancy, Plaintiff in Error.

### Gen. No. 30,313.

1. CONTEMPT—*assault by partisans of one suitor upon other party and associates in hall of court rooms as contempt.* Where partisans of complainant in a suit on trial, after being admonished by the court to restrain their expressions of ill feeling towards the defendant, left the court room, concealed themselves in the hallway leading thereto, and there assaulted the defendant, his wife and his attorney when they emerged from the court room, thereby causing a disturbance such as to require the court to suspend proceedings in another trial and send bailiffs to quell the disturbance, such acts constituted criminal contempt of court.

2. CONTEMPT—*necessity of preliminary proceedings before infliction of summary punishment.* Acts constituting a criminal contempt of court, if committed in the presence of the court, may be summarily punished, without formal preliminary proceedings.

3. CONTEMPT—*nature of acts as test whether constituting direct contempt.* The question whether particular acts constituted misbehavior in the presence of the court must be determined from the nature of the facts themselves.

4. CONTEMPT—*employment of unnecessary preliminary proceedings as restricting power of court to inflict summary punishment.* The power of the court to commit for contempt persons guilty of acts in its presence in disturbance of its proceedings is not affected by the fact that prior to entering an order adjudging the parties to be

in contempt the court directed the filing of an information, ruled each of the alleged contemnors to show cause why he should not be adjudged in contempt, and that each of such parties answered, denying the facts alleged in the informations, such preliminary proceedings having been unnecessary and superfluous, and the consequent delay for the benefit of the contemnors.

5. CONTEMPT—*acts immediately without court room door disturbing proceedings within as in presence of court.* Where the proceedings of the court were visibly and audibly disturbed by an altercation occurring immediately without the door of the court room, the misbehavior of the participants took place, constructively at least, in the presence of the court, and constituted direct contempt, as to which the court could proceed summarily, notwithstanding that it was necessary to call witnesses to establish the identity of the guilty parties.

Error by defendant to the Superior Court of Cook county; the Hon. HARRY A. LEWIS, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed February 2, 1926. Rehearing denied February 17, 1926.

EDWARD J. McCARTHY and LEO A. O'REILLY, for plaintiff in error; STEWART & O'BRIEN, of counsel.

ROBERT E. CROWE, State's Attorney, for defendant in error; HENRY T. CHACE, JR., EDWARD E. WILSON and CLARENCE E. NELSON, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

By this writ plaintiff in error, Joseph Clancy, seeks reversal of an order sentencing him to jail for a period of six months for contempt of court. A like sentence, in separate orders, was imposed at the same time upon Dave Ostran and Edward Deckert, each of whom has sued out a writ of error, the former in case No. 30,314 and the latter in case No. 30,315, which have been consolidated with this case for hearing upon the same record and practically the same state of facts.

The facts upon which the order was entered, most of which are recited in the order, are as follows:

On May 20, 1925, a certain case entitled *Ethel Cronin v. Frank Cronin,* then pending in the superior court of Cook county, came on for hearing before his honor, Judge Harry A. Lewis, on a motion to modify a previous order entered therein, which, after partial hearing, was continued to a later day in the term. Said Clancy was present as a witness for his step-daughter, complainant in the case (who was then the wife of said Edward Deckert). So much ill feeling and untoward conduct was displayed by the parties to the cause and those interested with them that the court on continuing the cause felt it necessary to admonish said Clancy and others and to advise restraint upon their conduct. Thereupon said Clancy and those connected or interested with the complainant in the cause, including said Ostran and Deckert, left the court room by its only door to the corridor or hallway of the building, which at the time stood open, and concealed themselves behind it awaiting the exit of defendant to the cause, his three children, his attorney, and his present wife, who, to avoid them, went into the jury room connected with the court room and waited there about fifteen minutes before making their exit from the court room through said open door. Immediately upon their coming into the corridor a violent onslaught and attack was made on them by said Clancy, Ostran and Deckert, one of them assaulting defendant Cronin, one his wife Margaret and the other his attorney, and causing such commotion, noise and excitement in and about the court room as to require the court to suspend the hearing of a cause then on trial and to direct its bailiff and clerk to go into the corridor to quell the disturbance so it could resume its duties. Upon said facts the court adjudged each of said parties, Clancy, Ostran and Deckert, to be in direct contempt of court.

It appears from the record that the court directed an information to be filed and entered a rule thereon against each of said offenders to show cause why he should not be held in contempt, and that each answered denying in the main the specific charges in the information. At the hearing had later in the term witnesses were called and heard over the objections of said contemnors who contended that the acts with which they were charged in the information did not take place in the presence of the court, and constituted constructive contempts, of which they stood purged by their sworn denials. In ruling upon the objections the court stated in effect that the matters charged in the information took place in its presence and with its knowledge, and that therefore it could and would proceed without the intervention of an information, rule and answer, which it allowed merely as a matter of grace to give contemnors the fullest opportunity for explanation or exculpation. And the order adjudging them to be in contempt recites that the hearing was had upon the statement of the court to said effect, as well as upon said information, rule and answer, and upon the evidence taken in open court. The order then proceeds to find the facts in substance as above stated.

That such a state of facts constituted a criminal contempt cannot be questioned, and it is conceded that, if they took place outside of the presence of the court, it is a constructive contempt which required such preliminary proceedings, and in such case, if the answer sufficiently denied the facts charged in the information, the contemnors should have been discharged. On the other hand, if the contempt was committed "in the presence of the court," as that phrase is construed, it was a direct contempt and no formal preliminary proceedings were necessary. The court could act summarily as it undertook to do in the instant case. (*Peo-*

*ple v. Gard,* 259 Ill. 238; *In re Savin,* 131 U. S. 267; Rapalje on Contempts, secs. 22, 23.)

But the difference in procedure does not affect the question whether the particular acts constitute misbehavior in the presence of the court. (*In re Savin, supra.*) That question must be determined from the nature of the facts themselves. If they took place in the presence of the court then the preliminary proceedings it directed were unnecessary and superfluous (*People v. Cochrane,* 307 Ill. 126; *Tolman v. Jones,* 114 Ill. 147; Rapalje on Contempts, sec. 93; 13 Corpus Juris, p. 63), and did not vitiate the proceedings for direct contempt. *Utile per inutile non vitiatur.* Preliminary proceedings were had in the *Gard* case, *supra,* but the court held that the acts having been committed in the presence of the court were a direct contempt and that the order of commitment could have been lawfully made without the preliminary proceedings (p. 242).

Nor was the court bound to proceed at once. It might do so at any time within the term, as it did, for its jurisdiction remained and the delay and direction for preliminary proceedings were, as stated by the court, for respondent's benefit and in no sense to his prejudice. (*Middlebrook v. State,* 43 Conn. 267, 269.)

As these principles relating to procedure are hardly open to question, the real controversy presented by the record is: (1) whether the contempt was committed in the presence of the court; and (2) if so, whether the court could hear evidence necessary to identify the guilty parties.

In *Stuart v. People,* 4 Ill. (3 Scam.) 395, and *People v. Wilson,* 64 Ill. 195, it was held that acts calculated to impede, embarrass or obstruct the court in the administration of justice will be considered as done in the presence of the court. It cannot be doubted that such was the effect of the acts here complained of. In *Dahnke v. People,* 168 Ill. 102, it was held that

where the court was disturbed and interfered with in its proceedings by the conduct of the custodian of the court building in changing the locks on the door of the court room and refusing to permit one of the judges to enter it for the purpose of holding court it constituted a direct contempt. In the *Savin* case, *supra,* it was held that an attempt to bribe a witness in a hallway of the courthouse, was committed in the presence of the court. A like ruling on a like state of facts was made in *Fisher v. McDaniel,* 9 Wyo. 457. In *United States v. Emerson,* 4 Cranch, C. C. 188, it was held that where there was an altercation and blows were struck in the entrance hall separated from the court room by a door without panels, but covered with a cloth so as to afford but slight obstruction to the sound, they took place in the presence of the court and constituted a direct contempt. While in the latter case, as in this case, the court had direct knowledge of the disturbance through the sense of hearing, in the other cases cited it had no direct knowledge of the affairs through the senses, but had to be informed thereof. In the case of *People v. McDonald,* 314 Ill. 548, cited by plaintiff in error, an attorney in the case was assaulted in the hallway off the court room, but the court was not in session and the judge had no personal knowledge of the assault until apprised thereof the next morning when summary proceedings were had. But here the facts are entirely different. The court was in session and the interference and obstruction to its proceedings from the disturbance in the hallway were as direct and manifest as if they had taken place inside the court room. Under such circumstances we think the acts constituting the contempt must be held to have been "in the presence of the court."

But it is urged that as the court had to be informed of the identity of the guilty parties the case cannot properly be regarded as one of direct contempt in

which summary proceedings may be had. This contention assumes that no testimony can properly be heard in a case of direct contempt; that no matter how or to what extent the court is disturbed or impeded in the performance of its duties, to constitute direct contempt authorizing summary proceedings every detail necessary to constitute it must come within the actual personal knowledge of the judge. But no case has been called to our attention where knowledge thus acquired is held indispensable to the assumption of jurisdiction to proceed summarily. In fact in most of the cases above cited, holding that the contempt was committed in the presence of the court and warranted summary proceedings, it became necessary to hear some evidence to inform the court of some essential facts. Here the court had complete knowledge of the real matter that constituted the contempt, namely, the disturbance of its proceedings. The only information it required to exercise its authority in a summary way was as to the identity of the guilty parties. It seems absurd that in such a case the court is powerless to assert its dignity and authority at once without the delay and formalities incident to preliminary proceedings necessary in case of constructive contempt. While in the latter, the party charged is afforded an opportunity to purge himself, no complaint can be urged on that score, as the same opportunity was given in the instant case by inviting the respondent to testify. He refused to avail himself of the privilege, preferring to stand upon the alleged irregularity of the proceedings.

We do not think, therefore, that a summary proceeding is necessarily confined to matters which come within the actual vision and hearing of the judge himself. In the case at bar, the court's proceedings were visibly and audibly disturbed by assaults just outside its entrance door. Under authorities cited they took place in its presence, constructively at least, and constituted direct contempt in which a court may proceed

376    APPELLATE COURTS OF ILLINOIS.

First National Bank v. National Produce Bank, 239 Ill. App. 376.

summarily, even though, as we think, it has to call witnesses to establish the identity of the guilty parties. The judgment will be affirmed.

*Affirmed.*

GRIDLEY and FITCH, JJ., concur.