PUBLISHED

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **6th** *day of* **February, 2024**.

Katie Orndoff,                                                                                                      Appellant,

 against          Record No. 0973-21-4
                          Circuit Court No. CR00036777-00

Commonwealth of Virginia,                                                                              Appellee.

Upon a Rehearing En Banc

Before Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White

Thomas K. Plofchan, Jr. (Westlake Legal Group, PLLC, on briefs), for appellant.

Graham K. Bryant, Deputy Solicitor General (Jason S. Miyares, Attorney General; Andrew N. Ferguson, Solicitor General; Erika L. Maley, Principal Deputy Solicitor General; Rick W. Eberstadt, Assistant Solicitor General; Craig Stallard, Senior Assistant Attorney General, on briefs), for appellee.

By opinion dated June 6, 2023, a panel of this Court, with one judge dissenting, reversed the trial court's judgment of summary contempt and vacated the conviction, holding that the trial court violated the defendant's due process rights in exercising the power of summary contempt because the trial judge did not personally observe in open court all the essential elements of the alleged contemptible conduct of testifying while voluntarily intoxicated. *See Orndoff v. Commonwealth*, 77 Va. App. 766 (2023). We granted the Commonwealth's petition for rehearing en banc and stayed the mandate of that decision.

Upon rehearing en banc, the judgment of the trial court is affirmed without opinion by an evenly divided Court. *See* Code § 17.1-402(E). Accordingly, the opinion previously rendered by a panel of this Court on June 6, 2023 is withdrawn and the mandate entered on that date is vacated. The appellant must pay to the Commonwealth of Virginia $150 damages.

Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Fulton, and White voted to affirm the judgment of the trial court.

Judges Huff, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, and Callins voted to reverse said judgment.

The Commonwealth is entitled to recover of the appellant the fees and costs to be assessed by the clerk of the trial court.

This order will be published and certified to the trial court.

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

*VIRGINIA:*

**PUBLISHED**

*In the Court of Appeals of Virginia on* **Tuesday** *the* **11th** *day of* **July, 2023**.

Katie Orndoff,                                                                                    Appellant,

 against          Record No. 0973-21-4
                  Circuit Court No. CR00036777-00

Commonwealth of Virginia,                                                        Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On June 20, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on June 6, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Chaney and Raphael
Argued at Winchester, Virginia

KATIE ORNDOFF

v.        Record No. 0973-21-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE VERNIDA R. CHANEY
JUNE 6, 2023

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Thomas K. Plofchan, Jr. (Westlake Legal Group, on brief), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Katie Orndoff appeared and testified at a criminal jury trial in September 2021 as a

witness on behalf of the Commonwealth and as the alleged assault victim of the accused. After

Ms. Orndoff testified for eighty minutes, the Circuit Court of Loudoun County summarily held

her in criminal contempt for "[m]isbehavior in the presence of the court," in violation of Code

§ 18.2-456, for testifying while voluntarily intoxicated. The circuit court also summarily

sentenced Ms. Orndoff to ten days in jail. The circuit court's oral pronouncement of its summary

contempt finding immediately followed Ms. Orndoff's uncounseled admission—in response to

the circuit court's questions—that she had smoked marijuana earlier that day.[1] On appeal,

Ms. Orndoff contends that the circuit court erred in summarily finding and punishing criminal

---

[1] Effective July 1, 2021, the General Assembly repealed former Code § 18.2-250.1, the
prohibition on marijuana possession. *See* 2021 Va. Acts Spec. Sess. I, chs. 550-51, cl. 3.

contempt in violation of her rights to due process of law.[2]  This Court holds that the circuit court

impermissibly exercised the power of summary contempt in violation of Ms. Orndoff's rights to

notice of the contempt charge, a fair hearing, and representation by counsel.

I.  FACTS AND PROCEEDINGS

A.  *Ms. Orndoff's Testimony*

On September 7, 2021, the Commonwealth called Ms. Orndoff to testify as the

complaining witness in the jury trial of James Paige Phillips, who was indicted on the felony

charge of domestic assault and battery of a family or household member, third or subsequent

offense.  Near the beginning of Ms. Orndoff's testimony, Mr. Phillips's counsel objected when

Ms. Orndoff testified that Mr. Phillips resided in her apartment for three weeks "until he got

arrested . . . ."  To support Mr. Phillips's objection, his counsel asserted that the parties had

agreed not to introduce information about Mr. Phillips's arrest history.  The circuit court

sustained the objection, ordered the reference to Mr. Phillips's arrest to be stricken from the

record, and instructed the jury to disregard it.  Moments later, Ms. Orndoff testified that one of

her shared financial responsibilities with Mr. Phillips was her prior payment for his bail bond.

Although Ms. Orndoff had already testified to this without objection, Mr. Phillips's counsel

asked the circuit court to admonish Ms. Orndoff to abide by the parties' agreement.  When the

circuit court asked counsel whether Ms. Orndoff knew the substance of their agreement, the

---

[2] Ms. Orndoff also contends on appeal that the circuit court denied her due process under
the United States Constitution and the Virginia Constitution by sentencing her to a period of
incarceration, ordering a post-conviction blood test, and ordering the public dissemination of her
protected health information.  Additionally, Ms. Orndoff contends that the circuit court erred in
convicting her based on insufficient evidence to prove intoxication and contemptuous intent.  We
decline to address these assignments of error in accordance with settled principles that Virginia
appellate courts (i) "strive to decide cases on the 'best and narrowest grounds available,'"
*Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015) (quoting *McGhee
v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)), and (ii) "avoid deciding constitutional issues
needlessly," *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Christopher v.
Harbury*, 536 U.S. 403, 417 (2002)).

Commonwealth's attorney replied, "[w]e had a conversation . . . about the parameters of -- and I don't know how much we should be talking about this in front of the jury, but . . . ." The circuit court then instructed Ms. Orndoff, "just answer the questions as asked, but don't reference things like arrest, unless that's a specific question . . . ."

Subsequently, when Mr. Phillips's counsel asked Ms. Orndoff to confirm that she met with Mr. Phillips in hotel rooms to "hang out and hook up," Ms. Orndoff replied, "I wouldn't say hook up. . . . [H]e was with me 24/7 when he wasn't incarcerated." Then Mr. Phillips's counsel again asked the circuit court to admonish Ms. Orndoff, and the circuit court again instructed her to "[j]ust listen to the question and answer it as asked."

After further cross-examination, Ms. Orndoff non-responsively interjected that Mr. Phillips "got out of a felony abduction -- like, back in January." In response, Mr. Phillips's counsel requested a sidebar conference, and the circuit court announced a recess and excused the jury.

*B. The Contempt Finding*

After the jury retired to the jury room, the circuit court told Ms. Orndoff that she appeared to be under the influence of narcotics or some other type of substance. The circuit court asked Ms. Orndoff, "Have you taken any medicines or narcotics or anything else that would influence you today?" Ms. Orndoff replied, "I recently came off all of my medication -- antidepressant, mood stabilizer -- and it's affecting me." When the circuit court asked, "In what way?," Ms. Orndoff explained that she had been taking these medications for over ten years and that without them, she felt very stressed and anxious "with this whole situation." Before Ms. Orndoff finished this explanation, the circuit court inquired, "What did you take today?" When Ms. Orndoff completed her explanation, the circuit court responded:

> That's not the question, and this is -- this is kind of an example.
> You're not being responsive to my question.

- 3 -

You appear to be under the influence at this time. Like, for example, you just rocked in your chair, and you almost fell over.

The circuit court further inquired, "I want to know what you've taken prior to today to come -- prior to coming in here today that's affected your demeanor?" Ms. Orndoff replied, "I mean, honestly, I smoke marijuana -- and that's what I did." Ms. Orndoff added that she smoked marijuana before driving to court, but she did not say how much marijuana she had smoked nor how much time had elapsed between her marijuana use and her drive to court.

After Ms. Orndoff acknowledged that she had smoked marijuana, the circuit court found her in contempt, sentenced her to ten days in jail, and remanded her to the sheriff's custody. After a brief recess, the Commonwealth asked the circuit court to reconsider the contempt finding. The Commonwealth proffered that two detectives were available to testify that they interacted with Ms. Orndoff when she arrived at the courthouse and she had exhibited her usual animated behavior and circuitous responses with no indicia of intoxication. The Commonwealth also asked the circuit court to appoint counsel for Ms. Orndoff. The circuit court responded:

> [S]he admitted in this court to smoking marijuana today, to using intoxicated -- intoxicants and then voluntarily appearing and testifying in court, after driving here. That was her admission. . . . She admitted to smoking marijuana.

The circuit court ruled that Ms. Orndoff was not entitled to counsel because she was held in summary contempt.

After the circuit court pronounced its finding that Ms. Orndoff was intoxicated, Mr. Phillips's counsel moved to dismiss the charge against him. Then the circuit court found "that there are circumstances that require a manifest necessity for a mistrial," and the court sua sponte declared a mistrial. The Commonwealth argued that it should be allowed an opportunity to rehabilitate Ms. Orndoff as a witness because "[s]he indicated that she smoked marijuana, which is not an illegal substance, this morning. She did not indicate that she was intoxicated."

The Commonwealth also reiterated that the court had taken issue with behaviors that

Ms. Orndoff usually exhibits when she is not intoxicated. In denying the Commonwealth's

request and rejecting the Commonwealth's contentions, the circuit court stated:

> I disagree. As I stated on the record, the witness was incoherent. Her body language was such she was rocking forward in her chair, rocking back. When I asked her a question, she almost tipped her chair over. She clearly manifested signs of intoxication and she admitted to smoking marijuana prior to driving over here.
>
> Whether it's legal or not has no bearing on this. If she admitted to drinking a fifth of Jack Daniel's and came to court and voluntarily testified drunk, that would be contemptible as well.

Subsequently, the circuit court declared a mistrial over the objections of Mr. Phillips and the

Commonwealth.[3]

After declaring a mistrial, the circuit court explained to the jury:

> During the testimony of Ms. Orndoff, the Court made some observations that it appeared that she may be under the influence of intoxicants. There is no way to know that; but in my judgment, there was objective indicia of that.
>
> So when you were excused, I had asked the witness whether she had consumed anything that could cause intoxication today, prior to her testimony. After some back and forth, she admitted to smoking marijuana today before she got in her car and drove here. Whether that is true or not, I don't know, but that's what she said.
>
> Based on her appearance, my judgment about her appearance, based upon her admission to voluntarily appearing in court and testifying after consuming an intoxicating substance, she has been found in contempt, and this court has declared a mistrial in this case.

---

[3] Ms. Orndoff argues on appeal that the circuit court improperly declared a mistrial in violation of Mr. Phillips's constitutional rights. *See* Amended Opening Brief (Am. Op. Br.) 57. However, Ms. Orndoff lacks standing to challenge the circuit court's declaration of a mistrial because she was not a party to the proceeding in Mr. Phillips's case. *See Tidewater Psychiatric Inst., Inc. v. Buttery*, 8 Va. App. 380, 383 (1989) ("A person cannot appeal a case to which he is not a party.").

. . . We have to ensure that this process is untainted, and we cannot have a person put on trial and being testified against by an accuser who is under the influence of intoxicants.

Thereafter, the court excused the jury and recessed the proceedings.

On September 7, 2021, the circuit court entered a commitment order (commitment order) recording the contempt finding and ten-day sentence for misbehavior in court, in violation of Code § 18.2-456(A)(1). The commitment order describes the contemptuous misbehavior as "appear and testify while voluntarily intoxicated." The commitment order also directed that Ms. Orndoff "be drug tested forthwith." The circuit court ordered: "Defendant to be transported to the E.R. and shall submit to a blood draw for narcotics. Results to be filed with the Clerk of the Court by the Sheriff or his designee."

On September 8, the day after the contempt finding, the circuit court entered an order recording its factual findings and judgment (September 8 contempt order). In addition to the findings and orders in the commitment order, the September 8 contempt order records the following:

> It appearing to the Court that the Defendant, *Katie Orndoff*, was subpoenaed as a witness for the Commonwealth . . . and the Defendant appearing to be under the influence of narcotics or another substance, was questioned by the Court about her use of substances prior to appearing for Court.

> At approximately 2:38 P.M., the Defendant admitted to smoking marijuana prior to coming to Court and denied the use of any other substances.

> At approximately 2:39 P.M., the Court *Ordered* the Defendant be found in summary contempt of the Court for appearing before the Court and testifying while voluntarily intoxicated . . . .

*C. Post-Conviction Motions and Orders*

On September 9, 2021, Ms. Orndoff filed a notice of appeal to this Court and the circuit court granted her motion for bond pending appeal.[4]  At the bond hearing, the circuit court summarized the basis of its summary contempt finding as follows:

> [T]he Court observed her demeanor as a witness in this case.  It appeared clear to me that she was under the influence of some intoxicants.  Who knows what they were.  It would be purely speculative.
>
> However, at one point, she rocked back on her chair which most chairs, as the one in the witness stand did, have four legs.  She was able to rise up on one leg only and almost fall to the floor.  She admitted to smoking marijuana immediately prior to getting into the car to drive to court.
>
> So based upon that, all of those factors being expressed in the record in the context of the jury trial caused a mistrial. . . .
>
> . . . .
>
> . . . I've personally observed her in court appearing to be under the influence.  She has admitted to using some intoxicants on the day of the trial within hours prior.  Of course, as we know with all admissions, that could be a partial admission, a full admission or a false admission.
>
> We really don't know, but I take it as at least a partial true admission.

Ms. Orndoff also moved to vacate the judgment of contempt, and the Commonwealth filed a brief in support of the motion.  The day before the scheduled hearing on the joint motion to vacate, the circuit court entered an order (1) removing the motion to vacate from the court's active docket and (2) denying the motion as "wholly without merit . . . ."  The circuit court also entered a separate order with the heading "ORDER *NUNC PRO TUNC* to the 7th Day of

---

[4] The circuit court set a $1,000 non-secured bond conditioned on supervision by the local pretrial services agency and additional terms and conditions.  The court also required, as a condition of release, that Ms. Orndoff submit to a "full panel drug screen" by urinalysis.

September 2021, Direct Summary Criminal Contempt VA Code § 18.2-456(1)" (the *nunc pro tunc* order). By its own terms, the *nunc pro tunc* order "clarified and amended" the orders of September 7, 2021, and September 8, 2021, "*nunc pro tunc* to the 7th day of September."[5] Ms. Orndoff filed a written objection to the *nunc pro tunc* order contending, *inter alia*, that the circuit court's additional factual findings "are not supported by the audio and visual record."

Ms. Orndoff filed a second motion to vacate the contempt conviction and an emergency motion to suspend the contempt order to permit oral argument on the motion to vacate. The attachments to the motion included the circuit court's audio recording of Ms. Orndoff's testimony and the video recording of her testimony from the courtroom security camera, which recorded her testimony from the perspective of the judge's bench. The circuit court stayed the finality of the contempt order and, on October 21, 2021, held a hearing on the second motion to vacate the contempt conviction.

At the hearing on the second motion to vacate the contempt conviction, the Commonwealth joined and argued in support of Ms. Orndoff's motion.[6] Following oral arguments, the circuit court stated its additional factual findings on the record before taking the motion under advisement.

The circuit court pronounced its finding that Ms. Orndoff "blurted out prejudicial content 10 times," eventually prompting Mr. Phillips's counsel to request a sidebar conference outside the presence of the jury. The circuit court also explicitly found that in giving this testimony,

---

[5] A footnote in the *nunc pro tunc* order states that to the extent that the September 7 order or the September 8 order is inconsistent with the *nunc pro tunc* order, the *nunc pro tunc* order shall control as to the court's findings and intent—in addition to the findings made contemporaneously with the court's colloquy with Ms. Orndoff and related findings and rulings.

[6] Although the Commonwealth's Attorney joined Ms. Orndoff's motion to vacate the contempt conviction in the circuit court, the Attorney General has argued on appeal that the contempt conviction should be affirmed.

Ms. Orndoff "did not have a bad intent, a malevolent intent," and she was not "being sinister or mean or spiteful or vengeful." The circuit court further found that Ms. Orndoff "lacked the capacity" to comply with the restrictions on her testimony "due to her voluntary intoxication prior to court."

On January 14, 2022, the circuit court issued an opinion and order denying the second motion to vacate the contempt conviction (January 2022 order). The court restated its finding that Ms. Orndoff had testified in a felony jury trial while voluntarily intoxicated, creating the necessity for a mistrial. The court found that Ms. Orndoff initially testified competently, but "as time passed, her physical and verbal demeanor worsened." The January 2022 order also records the court's additional factual findings and provides that "[a]ll prior findings, conclusions and orders are continued in full force and effect unless specifically modified herein."

The circuit court also noted in the January 2022 order that it allowed Ms. Orndoff an opportunity to provide an innocent explanation by questioning her before finding her in contempt. The circuit court found that Ms. Orndoff offered no "benign, mitigating, or otherwise legally satisfactory explanation for her conduct." Rather, the court concluded that "her explanations were 'clearly inadequate' and, indeed, inculpatory." The circuit court found that Ms. Orndoff "initially provided confused answers and had difficulty in focusing on the court's questions. She awkwardly side-stepped the court's question about medicines or narcotics, but then she stated that she used marijuana prior to court."

The circuit court further stated in the January 2022 order that "[Ms. Orndoff's] 'misbehavior' *was not the out-of-court use of intoxicating substances*, but rather her subsequent appearance as a witness in a felony jury trial in an intoxicated condition that caused unfair prejudice within the trial." The circuit court underscored that "*[n]o portion of the court's finding of contempt depended, in any way, upon knowing exactly how, when or where Ms. Orndoff*

- 9 -

*became intoxicated, nor did it depend upon the substance(s) she ingested.*" The circuit court also noted that it "did not rely on [Ms. Orndoff's] acknowledgment of having consumed marijuana immediately before driving to court." Additionally, the circuit court noted its previous finding "that it would be purely speculative to discern what substance(s) [Ms.] Orndoff had consumed . . . ."

Finally, the January 2022 order terminated the circuit court's stay of the September 8 contempt order. This appeal followed.

## II. THE FACTUAL BASIS FOR THE CONTEMPT FINDING

In summary contempt proceedings for direct contempt, "the actual facts upon which the court based its final conclusion must be set out." *Carter v. Commonwealth*, 2 Va. App. 392, 397 (1986) (citing 17 Am. Jur. 2d *Contempt* § 100 (1964)). "[T]he purpose of this requirement is to enable the appellate court to determine, by an inspection of the record, whether a contempt has in fact been committed and whether the court had jurisdiction to punish it." *Id.* (quoting 17 Am. Jur. 2d *Contempt* § 103 (1964)).

The circuit court held Ms. Orndoff in "direct summary criminal contempt" for "appearing before the Court and testifying while voluntarily intoxicated . . . ." The circuit court identified the following "manifestations of intoxication":

- Ms. Orndoff initially testified competently, but "as time passed, her physical and verbal demeanor worsened."

- Ms. Orndoff testified for about one hour and twenty minutes, but "[i]t wasn't until about 30 minutes prior to the holding in contempt that whatever was ingested . . . began to take hold and to kick-in and . . . things went downhill fast."

- "Gradually, her answers to questions would often be circuitous, rambling and confused and sometimes incoherent. It was also often accompanied by slouching forward and backward in her chair while, at times, making peculiar hand, arm and facial gestures."

- "Ms. Orndoff was at various times, incoherent, circuitous, inattentive . . . ."

- "Her speech was lethargic and rambling, and at times was alternating unnaturally between high and low tones."

- With "no malevolent intent on the part of Ms. Orndoff," she "volunteered nonresponsive, legally inadmissible, prejudicial information about the defendant 10 times . . . ."

- "The prejudicial testimony continued after numerous admonitions by the court during trial."

- "[S]he would repeatedly rock forward in her chair toward the front of the witness desk; repeatedly rock back in her chair to an almost prone physical position, at one point almost falling out of her chair."

- "She manifested physical symptoms of intoxication at times to the point of almost falling out of her chair."

The prejudicial testimony identified by the circuit court as manifestations of

Ms. Orndoff's intoxication includes:

1. [she] "*bailed him out of jail* one time" (Tr. 8, ln 18)
2. "*he got arrested* for . . ." (Tr. 10, ln. 9-10)
3. [she] *bailed him out . . . paid the bondsman . . .*" (Tr. 11, ln. 22 – Tr. 12, ln. 1)
4. "address that he uses *when he is on the run*" (Tr. 58, ln. 16-17)
5. "he was with me 24/7 *when he wasn't incarcerated*" (Tr. 60, ln. 5)
6. [the defendant and witness were in relationships with other people] "dependent on which time *he got locked up* and which time *he got out*" (Tr. 68, ln. 20-21)
7. " . . . I went and *saw him in jail*, and *bailed him out . . .*" (Tr. 69, ln. 16-17)
8. "*he was in jail . . .*" (Tr. 70, ln. 5)
9. "July 14th he was *already incarcerated.* He *got locked up* July 8th . . ." (Tr. 78, ln. 20-21)
10. " . . . *you know he got out of a felony abduction*" (Tr. 87, ln. 20-22)

(Alterations in original). Ms. Orndoff made the first 3 above-listed statements during direct

examination, within the first 10 minutes of her 80-minute testimony—before the circuit court

gave her any instructions regarding the content of her testimony.[7] Ms. Orndoff made the rest of the above-listed statements during cross-examination, in the last thirty minutes of her testimony. The circuit court noted that the last above-listed answer—asserting that Mr. Phillips "got out of a felony abduction"—prompted Mr. Phillips's counsel to request a sidebar conference, "which led to the court declaring a mistrial and finding the witness in contempt of court . . . ."

The circuit court found Ms. Orndoff's prejudicial testimony to be "the obvious manifestation of her voluntary intoxication." The circuit court further found that due to intoxication, Ms. Orndoff was "unable to follow the agreement of the parties to refrain from mentioning or referring to the incarceration status of the accused." The court also found that Ms. Orndoff's "inability to follow the rules was the result of intoxication."[8]

After reportedly making these observations, the circuit court questioned Ms. Orndoff "in an attempt to add clarity to the matter, and otherwise to give her an opportunity to give a benign, mitigating, or otherwise legally satisfactory explanation for her conduct." The circuit court found that "[s]he offered none."

---

[7] Ms. Orndoff gave the first above-listed answer without objection—stating that she had bailed Mr. Phillips out of jail—in response to the question, "were there any other financial sharing of responsibilities between the two of you?" The second above-listed statement was part of Ms. Orndoff's answer to a question about the period when Mr. Phillips resided with her in her apartment. Ms. Orndoff replied, "Three weeks in January, I believe, until he got arrested for --." Ms. Orndoff made the third above-listed statement—repeating her prior answer that she had paid for Mr. Phillips's bail—when she was asked again about shared financial responsibilities with Mr. Phillips.

[8] With respect to testifying contrary to the court's instructions, the circuit court found that Ms. Orndoff "lacked the capacity" to comply with the court's restrictions on her testimony "due to her voluntary intoxication prior to court." The court further found that Ms. Orndoff "did not have a bad intent" in testifying contrary to the court's instructions. The circuit court thereby found that Ms. Orndoff did not have the requisite intent to be held in contempt for non-compliance with the court's restrictions on her testimony. *See Abdo v. Commonwealth*, 64 Va. App. 468, 477 (2015) ("'[C]ontempt is, itself, a frame of mind' that consists in 'an unwillingness to recognize the authority and dignity of the court.'" (quoting John L. Costello, *Virginia Criminal Law and Procedure* § 26.4[1] (4th ed. 2014))).

The circuit court found that during the colloquy with Ms. Orndoff, "[s]he initially provided confused answers and had difficulty in focusing on the court's questions. She awkwardly side-stepped the court's question about medicines or narcotics, but then stated that she used marijuana prior to court." The circuit court also found that "she was rocking forward in her chair, rocking back. When I asked her a question, she almost tipped her chair over. She clearly manifested signs of intoxication . . . ."

Based on the circuit court's recorded observations, the court found that Ms. Orndoff "appeared intoxicated on an unknown substance." In finding Ms. Orndoff to be under the influence of some intoxicant(s), the circuit court noted, "[w]ho knows what they were." "[I]t would be purely speculative to discern what substance(s) [Ms.] Orndoff had consumed . . . ."

The circuit court noted that in finding Ms. Orndoff to be intoxicated in court, it "did not rely on her acknowledgment of having consumed marijuana immediately before driving to court." The court clarified that "*[n]o portion of the court's finding of contempt depended, in any way, upon knowing exactly how, when or where Ms. Orndoff became intoxicated, nor did it depend upon the substance(s) she ingested*."

III.  SUMMARY CONTEMPT AND DUE PROCESS

A.  *Limitations on the Power of Summary Contempt*

Summary adjudication and punishment of contempt are lawfully used to vindicate the authority and dignity of the court where "immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *Parham v. Commonwealth*, 60 Va. App. 450, 457 (2012) (quoting *In re Oliver*, 333 U.S. 257, 275 (1948) (citation omitted)). "In a summary adjudication, no evidence or further proof is required because the court has observed the offense." *Gilman v. Commonwealth*, 275 Va. 222, 227-28 (2008) (citing *Cooke v. United States*, 267 U.S. 517, 534 (1925)).

"Summary punishment always, and rightfully, is regarded with disfavor . . . ." *Scialdone v. Commonwealth*, 279 Va. 422, 443 (2010) (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). In accordance with the constitutional requirements of procedural due process, a court's authority to find and punish contempt in a summary proceeding is narrowly limited to *direct* contempt. *See id.* at 442-43. "Generally, a direct contempt is one committed in the presence of the court." *Gilman*, 275 Va. at 227. For a court to summarily punish for contempt, "the court-disturbing misconduct must not only occur in the court's immediate presence, . . . the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct." *In re Oliver*, 333 U.S. at 275.

In cases of indirect contempt where the judge did not personally observe *all the essential elements* of the misconduct,

> due process of law . . . requires that one charged with contempt of
> court be advised of the charges against him, have a reasonable
> opportunity to meet them by way of defense or explanation, have
> the right to be represented by counsel, and have a chance to testify
> and call other witnesses in his behalf, either by way of defense or
> explanation.

*Scialdone*, 279 Va. at 443 (alteration in original) (quoting *In re Oliver*, 333 U.S. at 275). When a judge's knowledge of the contemptuous conduct is "acquired from the testimony of others, *or even from the confession of the accused*, [this] would not justify conviction without a trial in which there was an opportunity for [the accused to present a] defense." *See In re Oliver*, 333 U.S. at 275 (emphasis added).

In a summary contempt proceeding, "when a trial court observes the essential elements of the contemptible conduct," the court may "ask questions to clarify some detail." *Scialdone*, 279 Va. at 447. But the answers to such questions—whether provided by the accused or other witnesses—cannot serve as the trial court's factual basis for finding any essential element of the alleged contemptible conduct. *See id.*; *In re Oliver*, 333 U.S. at 275.

- 14 -

## B. The Admission to Marijuana Use

Ms. Orndoff argues on appeal that the circuit court abused its discretion in summarily holding her in contempt for testifying while intoxicated because "any conclusions regarding intoxication resulted from information provided by confession." Amended Opening Brief (Am. Op. Br.) 38. Ms. Orndoff contends that even if her out-of-court marijuana use was not the conduct held to be contemptible, a summary contempt proceeding was improper because the circuit court based its finding of intoxication on her in-court admission—in response to the circuit court's questions—to smoking marijuana earlier that day. Ms. Orndoff argues that the circuit court erred in summarily holding her in contempt because some of the essential facts underlying the contempt conviction were not personally observed by the trial judge in open court.

Although the circuit court initially indicated that the contempt finding relied on Ms. Orndoff's admission to smoking marijuana, a review of the record reveals that the circuit court changed the stated factual basis for the contempt finding over the four months between the summary contempt proceeding and the entry of the January 2022 order. Moments after the circuit court's oral pronouncement of the contempt finding—in response to the Commonwealth's challenge to the intoxication finding—the circuit court identified Ms. Orndoff's admission to smoking marijuana as the factual basis for the intoxication finding:

> [S]he admitted in this court to smoking marijuana today, to using intoxicated -- intoxicants and then voluntarily appearing and testifying in court, after driving here. That was her admission. . . . She admitted to smoking marijuana.

Subsequently, the circuit court explained to the jury, "based upon her admission to voluntarily appearing in court and testifying after consuming an intoxicating substance, she has been found in contempt, and this court has declared a mistrial in this case." The following day, the circuit court entered the September 8 contempt order, which recorded Ms. Orndoff's admission to

smoking marijuana as the factual basis for the court's finding that she testified while intoxicated. At the bond hearing, the circuit court stated on the record, "She admitted to smoking marijuana immediately prior to getting into the car to drive to court. . . . She has admitted to using some intoxicants on the day of the trial within hours prior." In the September 2021 *nunc pro tunc* order, the circuit court recorded that "she did ultimately admit to smoking marijuana immediately prior to driving to court for the jury trial."

In contrast with the circuit court's initial statements about the factual basis for the contempt conviction, the January 2022 order explicitly states that the circuit court "did not rely on [Ms. Orndoff's] acknowledgment of having consumed marijuana" before her court appearance. The circuit court noted that its questions of Ms. Orndoff—which elicited her admission to smoking marijuana—were merely "clarifying questions" about conduct observed in open court. According to the January 2022 order (quoting *People v. Clancy*, 239 Ill. App. 369, 375 (Ill. App. Ct. 1926)), "[t]he court observed [Ms.] Orndoff to be intoxicated before she was questioned on the matter. . . . [T]he court 'had complete knowledge of the real matter that constituted the contempt.'" Thus, the circuit court eventually excluded Ms. Orndoff's admission to smoking marijuana from the facts on which the court found her to be intoxicated while testifying.

The January 2022 order modified the original recorded factual basis for the contempt conviction. In addition to stating that the circuit court's contempt finding did not rely on Ms. Orndoff's admission to smoking marijuana, the January 2022 order provided that "[a]ll prior findings, conclusions and orders are continued in full force and effect *unless specifically modified herein*." (Emphasis added). In effect, the circuit court struck its prior findings and conclusions that identified Ms. Orndoff's admission to smoking marijuana as a fact underlying

- 16 -

the findings of intoxication and contempt.[9]  Therefore, since the circuit court did not consider

Ms. Orndoff's admission to smoking marijuana in finding her in contempt, this Court does not

regard this admission as evidence underlying the contempt conviction.

*C. The Impermissible Summary Contempt Finding*

This Court holds that the circuit court erred in exercising the power of summary contempt

because the trial judge did not personally observe in open court all the essential elements of the

alleged contemptible conduct of testifying while voluntarily intoxicated.[10]  Of course, the trial

judge personally observed Ms. Orndoff testify.  However, the record does not support a finding

that the trial judge personally observed the essential elements of intoxication and voluntary use

of an intoxicant.  Since these essential elements of the alleged contemptible conduct were not

"under the eye of the court," the circuit court's use of summary contempt was impermissible.

*See In re Oliver*, 333 U.S. at 275.

As required, the circuit court set out on the record the facts on which the contempt

finding was based.  *See Carter*, 2 Va. App. at 397.  The circuit court's recorded factual basis for

the contempt finding includes no recorded observations linking the reportedly observed in-court

---

[9] Ms. Orndoff noted that the circuit court created a "contempt conundrum" when the court repeatedly changed its stated basis for the contempt finding in response to Ms. Orndoff's post-conviction arguments.  Am. Op. Br. 18.  Because Ms. Orndoff did not assign error to the circuit court's modifications of the factual basis for the contempt finding, this opinion does not address whether the circuit court erred by altering the court's initial recorded factual basis for the contempt conviction.  *See Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant." (citations omitted)).

[10] On review of a trial court's exercise of the power of summary contempt, this Court reviews only the contempt found by the trial court in the court's contempt order.  The circuit court held Ms. Orndoff in contempt for "appearing before the Court and testifying while voluntarily intoxicated."  The circuit court expressly found that Ms. Orndoff's failure to follow the court's instructions was not itself contemptuous.  Therefore, our review does not consider whether summary contempt would have been permissible if the circuit court had held Ms. Orndoff in contempt for not following the court's instructions regarding the limitations on her testimony.

behaviors to the use of any intoxicant. For example, the circuit court made no recorded observation of an odor of alcohol or marijuana emanating from Ms. Orndoff, nor any recorded observation of Ms. Orndoff consuming an intoxicant. According to the circuit court's recorded factual basis for the contempt finding, there was no evidence observed in open court establishing a causal nexus between the voluntary use of some intoxicant(s) and Ms. Orndoff's in-court behaviors. Although the circuit court characterized some in-court behaviors as "manifestations of intoxication," these reportedly observed behaviors are, at most, indicia of possible intoxication. *See Clemmer v. Commonwealth*, 208 Va. 661, 663 (1968) (holding that a finding of intoxication is not supported by evidence of behavior "indicative of intoxication"—such as stuttering, staggering, unsteadiness, and "bizarre conduct generally"—without additional evidence that the behavior was caused by the consumption of alcohol or other intoxicant). As the record shows, the circuit court found that the reportedly observed "manifestations of intoxication" were "due to her voluntary intoxication *prior to court*." (Emphasis added). Although the circuit court clarified that the contemptuous misbehavior "*was not the out-of-court use of intoxicating substances*," the alleged out-of-court use of some intoxicant(s) was an essential element of the alleged contemptible conduct of testifying while intoxicated. Because the trial judge did not personally observe this essential element of the alleged contemptible conduct, the use of summary contempt was impermissible.

Ms. Orndoff contends that the circuit court's findings of "manifestations of intoxication" refer to events that the trial judge did not personally observe in open court. One of the "manifestations of intoxication" identified by the circuit court was Ms. Orndoff's inability "to follow the agreement of the parties to refrain from mentioning or referring to the incarceration status of the accused." However, as Ms. Orndoff contends, the record shows that no such agreement was made in the presence of the court. In finding that the parties made this agreement

and informed Ms. Orndoff about its limitations on her testimony, the circuit court relied on the representations made by counsel. Thus, the summary contempt finding was based on some information beyond the judge's personal knowledge. Therefore, the summary contempt finding was impermissible.

Additionally, Ms. Orndoff contends that other findings of "manifestations of intoxication" refer to alleged events that did not occur in the circuit court's presence because they did not occur at all. Ms. Orndoff argues that contrary to the circuit court's recorded findings of "manifestations of intoxication," the audio-video evidence from the court's audio recording and security footage shows that her speech was not lethargic, her testimony was not incoherent, her tone of voice did not unnaturally fluctuate, and she did not repeatedly rock the witness chair and almost fall out of it. However, even if the trial judge observed in open court everything that the circuit court identified as "manifestations of intoxication," the record reflects that the trial judge did not personally observe evidence that these events were caused by Ms. Orndoff's voluntary consumption of some intoxicant(s). Therefore, the circuit court's conclusion that some of her in-court behaviors were "manifestations of intoxication" was necessarily a finding that out-of-court consumption of some intoxicant(s) caused these behaviors. As the circuit court acknowledged on the record, the reportedly observed "manifestations of intoxication" were "due to her voluntary intoxication *prior to court*." (Emphasis added). Given that Ms. Orndoff did not consume any intoxicant in open court, the circuit court's finding that she was *voluntarily* intoxicated is also necessarily a finding about alleged out-of-court conduct. Therefore, based on the record before us, this Court finds that all the essential elements of the alleged contemptible conduct of testifying while intoxicated did not entirely occur in the presence of the circuit court. Thus, the summary contempt finding was impermissible.

To conclude beyond a reasonable doubt that Ms. Orndoff was intoxicated in court, the circuit court was also required to rule out the hypotheses of innocence that (1) Ms. Orndoff's testimony and in-court behavior were consistent with her usual non-intoxicated conduct, as the Commonwealth proffered, and (2) Ms. Orndoff was not intoxicated, but was experiencing extreme stress and anxiety due to the recent cessation of her prescribed mental health medications and the circumstances of testifying about the charged assault, as Ms. Orndoff testified.[11] *See Haas v. Commonwealth*, 299 Va. 465, 468-69 (2021) ("[T]he factfinder determines . . . whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." (first alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017))). Consideration of these hypotheses of innocence required the circuit court to make findings about facts and out-of-court events beyond the judge's personal observations in open court.

Because all the essential elements of the alleged contemptible conduct did not occur in the presence of the circuit court, Ms. Orndoff had due process rights to notice of the contempt charge, a fair plenary hearing, and representation by counsel. *See Amos v. Commonwealth*, 61 Va. App. 730, 743 (2013) (en banc) ("If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing." (alteration in original) (quoting *In re Oliver*, 333 U.S. at 275-76)), *aff'd*, 287 Va. 301 (2014). Therefore, the circuit court erred in exercising the power of summary contempt.

---

[11] In reviewing the circuit court's exercise of the summary contempt power, we do not consider here whether a rational fact-finder could have reasonably excluded these hypotheses of innocence.

IV. CONCLUSION

The power of summary contempt was unavailable to the circuit court because some of the essential elements of the alleged contemptible conduct of testifying while intoxicated did not occur in the presence of the circuit court and were not personally observed by the judge. *See In re Oliver*, 333 U.S. at 275. The circuit court's impermissible exercise of the summary contempt power violated Ms. Orndoff's due process rights to notice of the contempt charge, a fair plenary hearing, and representation by counsel. *See id.*; *see also Scialdone*, 279 Va. at 443. Therefore, this Court reverses the circuit court's judgment of summary contempt, vacates the contempt conviction, and enters final judgment for Ms. Orndoff. *See Amos*, 61 Va. App. at 743 (reversing the trial court's judgment of summary contempt and entering final judgment for the defendant upon holding that summary contempt was unavailable).

*Reversed, vacated, and final judgment.*

Athey, J., dissenting.

Since I disagree with the majority's conclusion that the trial court erred by summarily holding Orndoff in contempt and instead deem the evidence sufficient to sustain Orndoff's summary contempt conviction, I respectfully dissent. Initially, "we review the exercise of a court's contempt power under an abuse of discretion standard." *Petrosinelli v. People for Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007). Moreover, even if we question whether "the evidence at the trial established guilt beyond a reasonable doubt," we must affirm if "*any* rational trier of fact could have found the essential elements of [contempt] beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). So based upon Orndoff's conduct in the presence of the court, I simply cannot agree with the majority that summary contempt was inappropriate here. Nor can I say that no rational trier of fact could have found Orndoff in contempt based on that conduct. As a result, I would affirm Orndoff's contempt conviction.

Although I agree that *In re Oliver*, 333 U.S. 257 (1948), and *Scialdone v. Commonwealth*, 279 Va. 422 (2010), provide guidance with respect to whether summary contempt is appropriate in a given case, I disagree with the majority's application of that guidance to these facts. The majority seemingly misinterprets *In re Oliver* as prohibiting summary contempt proceedings whenever a trial court gleans *any* knowledge from the testimony of the accused. For this proposition, the majority relies on the following statement from *In re Oliver*: "[t]his Court said that knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial." 333 U.S. at 275. However, this passage is discussing *Cooke v. United States*, 267 U.S. 517 (1925), which held that "in cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof *only* by the confession of the party, . . . the proper practice is . . . to require the

- 22 -

offender to appear and show cause why he should not be punished." *Id.* at 535 (emphasis added). In *Scialdone*, the Virginia Supreme Court cited *In re Oliver* and *Cooke* and said that "[c]ircumstances will undoubtedly arise when a trial court observes the essential elements of the contemptible conduct, but nonetheless needs to ask [the accused] questions to clarify some detail." *Scialdone*, 279 Va. at 447. Hence, neither *In re Oliver* nor *Scialdone* bar *all* questioning of the accused in summary contempt proceedings.

Further, the facts here are easily distinguishable from those which made summary contempt inappropriate in *Scialdone*. In *Scialdone*, a defendant's trial counsel had altered documents and attempted to enter them into evidence. Since the trial court suspected but was uncertain of wrongdoing, it immediately "questioned four witnesses under oath, including the three defendants, and . . . obtained additional documents from the law office." *Id.* at 446. The Virginia Supreme Court determined that adjudicating the contempt proceeding summarily was inappropriate since it was "clear that the [trial court] did not have personal knowledge of the misconduct." *Id.* (internal quotations and citations omitted). Here, the trial court had ample personal knowledge of Orndoff's contemptuous conduct since her impaired testimony happened right under its eye. Although the majority attempts to argue that because Orndoff did not ingest intoxicants in the court's presence she could not be held in contempt summarily, that analysis misconstrues the "misconduct" at issue. The misconduct was not that she *ingested* legal intoxicants. Rather, it was that she *appeared* and *testified* while intoxicated—as the trial court said, it was "her subsequent appearance as a witness in a felony jury trial in an intoxicated condition that caused unfair prejudice within the trial." Since Orndoff testified while intoxicated in a way that interrupted the administration of justice by causing unfair prejudice during Phillips' trial and thereby inconveniencing all the jurors and court staff by forcing the judge to declare a mistrial, the trial court did not err by adjudicating her contempt proceeding summarily.

Since I do not find that the trial court erred in proceeding summarily, I must also address Orndoff's assignment of error alleging that the evidence was insufficient to find her in summary contempt. We are required to review criminal convictions appealed on sufficiency grounds "with the highest degree of appellate deference." *Vasquez*, 291 Va. at 248 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). Initially, applying an objective view of the nature and content of Orndoff's testimony, I would have found the evidence sufficient for a reasonable trier of fact to conclude that Orndoff "[m]isbehav[ed] in the presence of the court" and "obstruct[ed] or interrupt[ed] the administration of justice"[12] by testifying while voluntarily intoxicated. Code § 18.2-456(A)(1). During the one hour and twenty minutes of Orndoff's testimony as the complaining witness in Phillips' felony jury trial, she mentioned his past or current incarceration status ten separate times. At a minimum, the record reflects that even after the trial court advised Orndoff not to "reference things like arrest," she continued to testify about Phillips' incarceration status repeatedly. In addition, as the duration of her testimony lengthened and the sustained objections to her testimony mounted, Orndoff became increasingly nonresponsive to questions and appeared to be unable to answer questions directly. She could not remember the questions she was asked and provided rambling answers that continued to violate the court's directive that she not mention Phillips' criminal history or past or present incarceration status. Further, Phillips was negatively impacted by both the impaired testimony and mistrial, having been held in custody prior to trial in two jurisdictions for over 14 months in connection with Orndoff's claim of assault. As a result of Orndoff's conduct in the presence of the trial court, he was denied his day in court and subjected to further post-mistrial incarceration.

---

[12] Although Code § 18.2-456(A)(1) only requires "[m]isbehavior in the presence of the court" *or* misbehavior "so near thereto as to obstruct or interrupt the administration of justice," the trial court here made clear that Orndoff misbehaved in the presence of the court which simultaneously obstructed or interrupted the administration of justice.

- 24 -

In addition, I cannot find that no rational trier of fact could have determined that Orndoff's voluntary intoxication best explained her misbehavior in the presence of the court nor that any further testimony by her that day would have further obstructed or interrupted the administration of justice in the prosecution of Phillips. Thus, I also cannot conclude that the trial court's decision to release the jury by declaring a mistrial was unreasonable given the prejudicial nature of her continued references to Phillips' criminal history. Nor can I find that Orndoff's conduct in the presence of the jury was insufficient to support a finding of contempt.

Hence, based on the foregoing, I also cannot find that no rational trier of fact could have concluded that Orndoff possessed the requisite intent to justify a criminal contempt conviction. Specific intent is not required to satisfy the intent element necessary for a finding of criminal contempt; only recklessness is required. *Abdo v. Commonwealth*, 64 Va. App. 468, 477 (2015). For example, we have previously held that even repeated tardiness to court proceedings is sufficiently reckless to satisfy the intent element of contempt. *See id.* at 479. Thus, based on the applicable standard of review, I cannot determine that there was insufficient evidence for any rational fact finder to conclude that Orndoff satisfied the requisite element of reckless intent by voluntarily consuming intoxicating substances before a known court appearance when she was the complaining witness in a felony jury trial.

Accordingly, applying the deferential standard of review applicable here, I respectfully disagree with the majority that the trial court abused its discretion by finding that Orndoff's repeated, impaired references to Phillips' criminal history in its presence were sufficiently contemptible to be adjudicated summarily. Hence, utilizing the applicable "highest degree of appellate deference," I would also have determined that the evidence was sufficient to support the contempt conviction. Thus, I would have affirmed Orndoff's summary contempt conviction, and therefore I am compelled to respectfully dissent.